IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FELIPE JESUS VAZQUEZ | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-11-CV-2582-B-BD |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Felipe Jesus Vazquez, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

Petitioner was charged in two indictments with the aggravated sexual assault of his five year-old daughter.[1] Following a jury trial, petitioner was convicted in both cases and sentenced to 60 years confinement. His convictions and sentences were affirmed on direct appeal. *Vazquez v. State*, Nos. 05-08-00464-CR & 05-08-00465-CR, 2009 WL 369479 (Tex. App. -- Dallas, Feb. 17, 2009, pet. ref'd). Petitioner also filed two applications for state post-conviction relief -- one for each conviction. The applications were denied without written order. *Ex parte Vazquez*, WR-75,798-01 & WR-75,798-02 (Tex. Crim. App. Sept. 28, 2011). Petitioner then filed this action in federal district court.

---

[1] The indictments allege that both sexual assaults occurred on or about May 30, 2003. (*See* St. App. Tr-I at 2; St. App. Tr-II at 2). At the time, the complainant was five years old. (*See* SF-III at 14). She was 10 years old when the case was tried in 2007. (*Id.*).

II.

In three grounds for relief, petitioner contends that he received ineffective assistance of counsel when his attorney: (1) failed to impeach the complainant with prior inconsistent statements; (2) allowed the prosecutor to elicit bolstering testimony from a clinical psychologist; and (3) did not fully object to hearsay testimony from the complainant's mother.

A.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067.

Where, as here, a state court has already rejected a claim of ineffective assistance of counsel, a federal court may grant habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v.*

*Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by the state court are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Threadgill v. Quarterman*, No. 3-05-CV-2217-D, 2009 WL 2448499 at *5 (N.D. Tex. Aug. 10, 2009) (citing cases), *aff'd*, 425 Fed.Appx. 298, 2011 WL 1812764 (5th Cir. May 12, 2011), *cert. denied*, 132 S.Ct. 1095 (2012). This presumption applies not only to explicit findings of fact, but "it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Id.*, *quoting Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002); *see also Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

B.

Petitioner contends that his attorney was ineffective for failing to cross-examine the complainant with "false and fanciful allegations" made during an interview at the Dallas Children's Advocacy Center ("DCAC"). Shortly after the alleged sexual abuse occurred in 2003, the complainant told a forensic interviewer at DCAC that her mother had walked in on the assault, called the police, and "grounded my dad because . . . he was putting his privates inside my privates."

*Ex parte Vazquez*, WR-75,798-01 & WR-75,798-02, Tr. at 54-55, 70, 72. The complainant also told the interviewer that the sexual abuse occurred at three different locations -- her mother's house, petitioner's house, and her grandmother's house. *Id.*, Tr. at 56, 62, 69. However, at the trial in 2007, the complainant denied that her mother walked in on the alleged sexual assault, did not remember telling the police or anyone else that her mother had witnessed the assault, and testified that all of the abuse occurred at her mother's house in Dallas, Texas. (*See* SF-III at 52, 57, 60-61). Defense counsel made no attempt to impeach the complainant with statements made to the forensic interviewer four years earlier.

On state collateral review, petitioner's attorney explained his decision not to impeach the complainant with her prior statements:

> [T]he witness was very sketchy on many of her recollections in regards to the actual specifics and who she had spoken to. In fact, when I asked her in regards to specifically to speaking to the DCAC forensic interviewer, she acted like she didn't actually remember talking to her. But I asked her specifically in regards to some different statements that she had made to the interviewer and she admitted that she had said it, and i[n] fact, it was false.
>
> \* \* \* \*
>
> I asked her, I don't know, two or three different occasions in regards to the interview, and based upon her responses, it wasn't -- I mean there was no value . . . [to] get someone to keep saying I don't remember. I don't know. In light of her testimony, that was basically our defensive strategy is that due to the fact that these allegations were alleged to have occurred at a very early age, she did not have a sufficient recall of any of the actual events, and our strategy was to try to impress upon the jury that due to her -- due to her lack of recall and due to the time that had passed that her allegations weren't worthy of belief beyond a reasonable doubt whether they may have been true or not.

*Ex parte Vazquez*, WR-75,798-02, Evid. Hrg. Tr. at 9-10. Indeed, the record shows that defense counsel questioned the complainant about her prior statements regarding the alleged sexual abuse.

(*See* SF-III at 59-62, 73-77). Not only did the complainant not remember telling anyone that her mother had walked in on the assault, but she did not remember even talking to a woman named "Alice" -- the interviewer at DCAC. (*See id.* at 68-69).[2] Moreover, petitioner does not suggest that the complainant's prior statements were true, while her trial testimony was false. Even had counsel questioned the complainant in more detail about her prior statements to the forensic interviewer, none of those statements were favorable to petitioner. Thus, petitioner was not prejudiced by any error in this regard. *See Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel).

C.

Petitioner also complains that his attorney failed to object to bolstering testimony by Trisha Favre, a clinical psychologist. After describing the behavior exhibited by the complainant during 22 therapy sessions, Favre testified that she diagnosed the complainant with post-traumatic stress disorder, which "means that a child or person, in this case a child, was exposed to a trauma, in this case sexual abuse, and it was followed by several symptoms." (SF-IV at 77-78). At the evidentiary hearing on petitioner's state writ, defense counsel explained why he did not object to this testimony:

> I didn't see anywhere in the record where this woman said she believed the daughter or was testifying to the jury that this girl's testimony was credible or should be believed. She just testified that the symptoms based upon history could be consistent with post traumatic stress disorder caused by sexual abuse, but it also could be pointed out and admitted that it could be caused by other factors.

*Ex Parte Vazquez*, WR-75,798-02, Evid. Hrg. Tr. at 13.

---

[2] At the evidentiary hearing, defense counsel noted that the trial transcript incorrectly identifies the forensic interviewer as "Alice" instead of "Alex." *See Ex parte Vazquez*, WR-75,798-02, Evid. Hrg. Tr. at 23-24.

Relying on *Salinas v. State*, 166 S.W.3d 368 (Tex. App. -- Fort Worth 2005, pet. ref'd), petitioner argues that Favre's testimony was improper under Texas law because it bolstered the complainant's testimony and implicitly vouched for her credibility. In *Salinas*, the state appeals court held that an expert improperly testified about her diagnosis of sexual abuse based solely on the complainant's report of abuse. According to the court, such testimony was a direct comment on the credibility of the complainant and, therefore, constituted improper bolstering. *Id.* at 371. However, the *Salinas* court determined that the error was not prejudicial because the complainant's testimony about the sexual abuse was clear and unequivocal, her outcry was prompt, and the state did not emphasize the improper expert testimony in closing argument. *Id.* at 371-72.

Unlike *Salinas*, Favre based her diagnosis of sexual abuse on almost *two dozen* therapy sessions -- not on allegations made by the complainant during a single exam. *See Salinas*, 166 S.W.3d at 370 (the expert "diagnosed sexual abuse . . . because the child told her that digital penetration had occurred and because there was no physical evidence of any sexual abuse"). In Texas, an expert may provide testimony that a child exhibits symptoms consistent with sexual abuse as long as such testimony is not a "'direct opinion on the truthfulness' of a child-complainant's allegation." *Conti v. State*, Nos. 14-10-00632-CR & 14-10-00633-CR, 2011 WL 5248348 at *4 (Tex. App. -- Houston [14th Dist.], Nov. 3, 2011, pet. filed) (citing cases). Nowhere in her testimony did Favre directly comment on the complainant's credibility. Also, as in *Salinas*, the complainant testified clearly and unequivocally about the sexual abuse, (*see* SF-III at 27-47), and the prosecutor did not rely, either directly or indirectly, on Favre's diagnosis to bolster the credibility of the complainant. Even if counsel had legal grounds to object to this testimony, his failure to do so was not prejudicial.

D.

Finally, petitioner argues that his attorney should have objected to hearsay testimony by the complainant's mother, Delores Rodriguez, "which the state wrongly claimed qualified as 'prior consistent statements' under the Texas Rules of Evidence." (*See* Hab. Pet. at 6, ¶ 20(A)). After Rodriguez testified on cross-examination that the complainant never told her about certain incidents of sexual abuse, the following colloquy occurred on re-direct:

> Q. [BY PROSECUTOR]: And you said -- Mr. Johnson was asking you about you being shocked that all of this happened, and you said she had never told you anything other than the incidents that you had talked about with the bath tub.
>
> A. [BY WITNESS]: Yes.
>
> Q. And I believe you said that she did tell you what [petitioner] has done to her.
>
> A. She has.
>
> Q. And you said something -- that she has been very consistent about that.
>
> A. Yes.
>
> Q. And tell the jury what it is that she has told you has happened.
>
> [DEFENSE COUNSEL]: Judge, that's going to be hearsay.
>
> [PROSECUTOR]: Judge, I think it's a prior consistent statement. He's opened the door on his cross-examination and tried to say that she has said many different things. I think this witness is entitled to say what it is that she has told her.
>
> [DEFENSE COUNSEL]: I asked the witness if she made statements to other people, not to this witness.
>
> THE COURT: I understand. The objection is overruled, and you may answer this question.

(*See* SF-III at 144-45). Rodriguez then briefly recounted the statements made to her by the complainant about sexual abuse by petitioner. (*Id.* at 145-46). As best the court understands his claim, petitioner apparently believes that defense counsel should have objected that the state failed to establish a proper predicate for the admission of prior consistent statements under Tex. R. Evid. 801(e)(1)(B)[3] -- that is, the state failed to prove that the statements were made prior to the existence of a motive to fabricate.

Under Texas law, prior consistent statements are admissible where: (1) the declarant testifies at trial and is subject to cross-examination; (2) there is an express or implied charge of recent fabrication or improper influence or motive; (3) the prior statement is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement is made before the supposed motive to falsify arose. *See Hammons v. State*, 239 S.W.3d 798, 803-04 (Tex. Crim. App. 2007). The foundation required to justify the admission of a prior consistent statement "is minimal." *Id.* at 804. "[E]ven an attack upon the accuracy of the witness's memory might suffice to permit the introduction of a prior consistent statement." *Id.* Although petitioner believes that the state failed to establish a proper predicate for the admission of prior consistent statements made by the complainant:

---

[3] Rule 801(e)(1)(B) provides:

> A statement is not hearsay if:
>
> (1)    The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is --
>
> \* \* \* \*
>
> (B)    consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]

TEX. R. EVID. 801(e)(1)(B).

> [T]he State cannot lay a proper predicate for the admission of a prior consistent statement. That predicate is laid by the content, tone, and tenor of defense cross-examination. It either does or does not "open the door" to the admissibility of a prior consistent statement by an express or implied suggestion that the witness is fabricating her testimony in some relevant respect. In deciding that question, the trial court must consider the totality of the cross-examination, not isolated portions or selected questions and answers.

*Id.* at 808. A fair reading of the record indicates that the defense strategy at trial was to suggest to the jury that Rodriguez, Favre, and state prosecutors had coached the complainant over a four-year period from 2003 to 2007, causing her to make false accusations against petitioner. (*See* SF-III at 59-60, 66-71, 92; SF-V at 21-23, 25-29, 34). Because counsel "opened the door" to the admission of prior consistent statements made by the complainant, any further objection on that ground would have been futile. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997), *cert. denied*, 119 S.Ct. 418 (1998) (failure to make a meritless objection cannot be grounds for ineffective assistance of counsel). Nor can petitioner demonstrate prejudice. In response to the prosecutor's question, Rodriguez testified that the complainant told her that petitioner "hurt her" anus and vagina with his penis, forced her to perform oral sex on him, and showed her a sexually explicit video on the computer. (*See* SF-III at 145-46). The complainant and another witness, Christie Martinez, offered similar testimony at trial. (*See id.* at 34-35, 42-44, 166-68). Thus, there is no reasonable probability that the outcome of the trial would have been different had counsel successfully objected to the admission of Rodriguez's testimony.[4]

---

[4] To the extent petitioner argues that the cumulative effect of errors by counsel deprived him of a fair trial, he is not entitled to relief on that ground. Petitioner has failed to establish that the performance of his attorney was deficient in any way or that he was prejudiced thereby. As a result, relief is not available under the "cumulative error doctrine." *See Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir.), *cert. denied*, 121 S.Ct. 122 (2000) (petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error).

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 28, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE